UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RYAN JAMES REEDER,

                    Plaintiff,

      v.

DETECTIVE STEVEN VINE and
INVESTIGATOR MICHAEL STROHM,

                 Defendants.

_____

**DECISION AND ORDER**

6:20-CV-06026 EAW

## INTRODUCTION

*Pro se* plaintiff Ryan James Reeder ("Plaintiff") commenced this action alleging claims arising from his arrest and prosecution in the counties of Seneca and Ontario, outside Rochester, New York.  (Dkt. 1).  Presently before the Court are motions for summary judgment filed by Defendant Detective Steven Vine ("Defendant Vine") (Dkt. 53) and Defendant Investigator Michael Strohm ("Defendant Strohm") (Dkt. 55) (collectively "Defendants").  Also pending is Plaintiff's motion to exclude (Dkt. 95) and Defendant Vine's motion to file a response to Plaintiff's statement of facts (Dkt. 115).

For the reasons explained below, Defendants' motions for summary judgment are granted, and Plaintiff's motion to exclude and Defendant Vine's motion to file a response are denied as moot.

## BACKGROUND

The following facts are taken from Defendant Vine's statement of material facts (Dkt. 55-22), Plaintiff's statement of facts (Dkt. 83 at 12-19), Defendant Vine's response

to Plaintiff's statement of facts (Dkt. 101-1), Plaintiff's response to Defendant Vine's statement of facts (Dkt. 105), Plaintiff's statement of disputed material facts (Dkt. 113), and the exhibits submitted by the parties. Defendant Strohm did not submit a statement of material facts, as required by Local Rule 56(a)(1), which alone can be grounds for denial of his motion.[1] Nonetheless, because Defendant Vine and Plaintiff have provided statements regarding the relevant facts and all parties have submitted relevant exhibits, the Court will consider the merits of Defendant Strohm's motion. Where a fact is disputed, the Court has noted the same.

Defendant Vine, Lead Narcotics Director employed by the City of Geneva, located in Ontario County, testified that on September 7, 2017, he personally observed Plaintiff selling a controlled substance. (Dkt. 53-22 at ¶ 2). Plaintiff disputes that Defendant Vine has proof of this observation. (Dkt. 105 at ¶ 2). A confidential informant ("the CI") used

---

[1] Defendant Strohm filed a document called "Attorney's Affidavit and Memorandum in Support of Motion for Summary Judgment" (Dkt. 55-1), but this document does not comply with the Court's Local Rules. Although the document contains some numbered paragraphs with citations to supporting evidence, the Local Rules require that the statement of facts be a separate document. *See* L. R. Civ. P. 56(a)(1) ("Upon any motion for summary judgment pursuant to Fed. R. Civ. P. 56, there shall be annexed to the notice of motion a *separate*, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Each such statement must be followed by citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Fed. R. Civ. P. 56(c)(1)(A). Citations shall identify with specificity the relevant page and paragraph or line number of the evidence cited. Failure to submit such a statement may constitute grounds for denial of the motion." (emphasis added)). In addition, Local Rule 7(a)(3) states in pertinent part: "An affidavit, declaration, or affirmation must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports." As indicated, the document submitted by Defendant Strohm is improperly comprised of legal argument and an affidavit. Notwithstanding these deficiencies, the Court has considered the submission.

by Defendant Vine and the City of Geneva Police Department ("GPD") advised Defendant Vine that Plaintiff offered to sell him cocaine and the CI gave Plaintiff $80 for a half gram. (Dkt. 53-22 at ¶¶ 5, 6).   Following the purchase, the CI met with the GPD Drug Enforcement Unit and turned over the purchased drugs. (*Id.* at ¶ 8).   Officers searched the CI and his vehicle to confirm that he was clean.   (*Id.*).   The drugs tested positive for cocaine on a field test kit.   (*Id.* at ¶ 9).   Plaintiff denies that any drugs possessed by the CI were obtained from Plaintiff.   (Dkt. 105 at ¶¶ 5, 6).

Defendant Vine avers that the next day, on September 8, 2017, he again personally witnessed Plaintiff selling drugs to the same CI, which Plaintiff denies.   (Dkt. 53-22 at ¶ 10; Dkt. 105 at ¶ 10).   Defendant Vine alleges that the GPD gave $160 buy money to the CI, which he used to purchase a baggie of tan powder from Plaintiff.   (Dkt. 53-22 at ¶¶ 13, 14).   When the CI turned the baggie over to the GPD Drug Enforcement Unit, it tested positive for fentanyl on a field test.   (*Id.* at ¶¶ 15, 17).   As a result of the controlled buys, Defendant Vine prepared felony complaints against Plaintiff for the criminal sale of a controlled substance in the third degree.   (*Id.* at ¶ 19).   Plaintiff contends that the felony complaints were not prepared until after the October 2017 stop.   (Dkt. 105 at ¶ 19). Defendant Vine testified that he did not sign or file the felony complaints because he intended to try to interview Plaintiff for more information.   (Dkt. 84-3 at 11).

On October 10, 2017, Defendant Strohm, an investigator with the Seneca County Sheriff's Office, set up a controlled buy with the same CI.   (Dkt. 53-22 at ¶ 21).   The CI informed Defendant Strohm that he was going with Plaintiff to purchase drugs in Rochester.   (*Id.* at ¶ 23).   Defendant Strohm and his partner followed the CI's vehicle to

Fayette, New York, where he picked up Plaintiff. (*Id.* at ¶ 26). Defendant Strohm and his partner lost sight of the vehicle after it entered the county in which Rochester is situated (Monroe County), but the CI made contact with Defendant Strohm by telephone. (*Id.* at ¶¶ 30, 31). The CI advised Defendant Strohm of their location and also stated that Plaintiff had ingested heroin and was passed out in the vehicle. (*Id.* at ¶ 33). Plaintiff does not deny being with the CI that day but disputes the facts relating to the purchase of narcotics. (Dkt. 105 at ¶¶ 21-35).

Defendant Strohm reports that he and his partner made contact with the vehicle in Ontario County and began following it again. (Dkt. 53-22 at ¶¶ 34, 35). During the drive, Defendant Strohm called Defendant Vine, who advised Defendant Strohm that he had felony complaints for Plaintiff arising from the September 7 and September 8 controlled buys. (*Id.* at ¶¶ 36, 37). Defendant Vine requested that Defendant Strohm stop the vehicle to arrest and hold Plaintiff until Defendant Vine could arrive at the scene. (*Id.* at ¶ 38). The vehicle was stopped on Sessler Drive in the Town of Waterloo, Seneca County. (*Id.* at ¶ 39). When Defendant Vine arrived at the scene, Plaintiff was in handcuffs. (*Id.* at ¶ 42). Members of the Seneca County Sheriff's Office searched Plaintiff and located two bags suspected to contain heroin or fentanyl. (*Id.* at ¶ 44). Seneca County Sheriff's officers turned Plaintiff over to the custody of the GPD for processing on the felony charges. (*Id.* at ¶ 45). Plaintiff does not dispute that the vehicle was stopped or that narcotics were located but challenges the legality of the stop. (Dkt. 105 at ¶¶ 38, 39, 43).

Defendant Strohm followed Defendant Vine to the GPD, where Plaintiff was searched incident to the arrest. (Dkt. 53-22 at ¶¶ 47, 48). Plaintiff shook his pant leg and

a box of cigarettes fell out and inside the box was 16 bags of suspected heroin. (*Id.* at ¶¶ 50, 51). Defendant Vine turned the 16 bags over to members of the Seneca County Sheriff's Office. (*Id.* at ¶ 53). Plaintiff contends that he was illegally searched without cause. (Dkt. 105 at ¶ 51).

Plaintiff was formally charged with criminal possession of a controlled substance in violation of New York Penal Law § 220.16(1) and arraigned in Geneva City Court. (Dkt. 53-22 at ¶¶ 54, 55; Dkt. 105 at ¶ 54, 55; Dkt. 55-11). The Ontario County and Seneca County grand juries indicted Plaintiff. (Dkt. 53-22 at ¶ 56; Dkt. 105 at ¶ 56). The Ontario County indictment charged two counts of criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39(1)[2] arising from the incidents on September 7 and September 8 (Dkt. 53-13 at 1), and the Seneca County indictment charged criminal possession of a controlled substance in the third degree in violation of New York Penal Law § 220.16(1)[3] arising from the October 10 events (*id.* at 2).

On July 12, 2018, Acting Seneca County Court Judge Richard Healy denied a motion to dismiss the Seneca County indictment following his review of the grand jury minutes. (Dkt. 53-22 at ¶ 57). A hearing on Plaintiff's motion to suppress was held before Judge Healy on July 16, 2018. (*Id.* at ¶ 58). On September 10, 2018, Judge Healy ruled

---

[2]     "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." N.Y. Penal Law § 220.39(1). This crime is classified as a Class B felony.

[3]     "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." N.Y. Penal Law § 220.16(1). This crime is classified as a Class B felony.

that there was probable cause for the stop and arrest on October 10, 2017.  (*Id.* at ¶ 60).  At a bench trial before Judge Healy on November 16, 2018, Plaintiff was found not guilty of the charge for possession of a controlled substance with intent to sell but convicted of the lesser included misdemeanor offense of criminal possession of a controlled substance in the seventh degree.  (*Id.* at ¶ 63; Dkt. 53-20 at 84).  Plaintiff appealed his conviction to the New York Appellate Division Fourth Department, and his challenge to the legality of the stop was rejected and his conviction affirmed.  (Dkt. 53-22 at ¶ 65; Dkt. 105 at ¶ 65); *see People v. Reeder*, 204 A.D.3d 1527 (4th Dep't 2022).

On August 1, 2018, an Ontario County judge dismissed Plaintiff's indictment in Ontario County as a result of a prosecutor's grand jury instruction error, with leave to re-present.  (Dkt. 53-22 at ¶ 59; Dkt. 53-17).  It is undisputed by the parties that the charges were not thereafter pursued.

## **PROCEDURAL HISTORY**

Plaintiff commenced this action on January 9, 2020.  (Dkt. 1).  On January 24, 2020, the Court denied Plaintiff's motion to proceed *in forma pauperis* and administratively terminated the action.  (Dkt. 3).  Plaintiff's renewed *in forma pauperis* motion was granted by the Court on August 24, 2020, in connection with the screening of Plaintiff's complaint.  (Dkt. 13).  In the screening order, the Court dismissed certain claims with prejudice and permitted Plaintiff leave to amend his complaint.  (*Id.*).  Plaintiff filed his amended complaint on September 24, 2020.  (Dkt. 14).  In the screening order on the amended complaint, the Court permitted Plaintiff's claims for false arrest and malicious prosecution to proceed against Defendant Vine and Defendant Strohm.  (Dkt. 15).  Defendant Strohm

filed his answer on April 30, 2021 (Dkt. 19), and Defendant Vine's answer was filed on May 28, 2021 (Dkt. 29).

Defendants filed the instant motions for summary judgment on May 9, 2022.  (Dkt. 53; Dkt. 55).  Plaintiff filed his response on October 5, 2022.  (Dkt. 83; Dkt. 84).  Defendant Vine filed his reply on December 8, 2022.  (Dkt. 101).  Plaintiff filed supplemental responses, many without leave of Court, but which the Court has nonetheless considered for purposes of the pending motions.  (Dkt. 87; Dt. 99; Dkt. 105; Dkt. 108; Dkt. 109; Dkt. 110).

## DISCUSSION

### I.    Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the

non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them 'to raise the strongest arguments that they suggest.'" *Thorne v. Lewis*, No. 3:19cv24 (VLB), 2021 WL 4324475, at *2 (D. Conn. Sept. 23, 2021) (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted)).  However, a *pro se* litigant may not rely on allegations unsupported by admissible evidence to overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.   Defendants Are Entitled to Summary Judgment

Defendants seek summary judgment on both of Plaintiff's claims, contending that there are no genuine issues of material fact establishing liability by either Defendant.  They

further argue that the affirmative defense of qualified immunity justifies dismissal of Plaintiff's claims.  The Court agrees.

A.    **False Arrest**

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest him.  In particular, Defendants contend that the totality of the circumstances, including the fact that Defendant Vine personally witnessed Plaintiff selling controlled substances on two occasions, justified his arrest.

The Court agrees with Defendants that summary judgment on Plaintiff's false arrest claim is warranted.  "A claim for false arrest under § 1983 looks to state law as a starting point to determine the elements of [the] claim. . . ."  *Potter v. Port Jervis Police Dep't*, No. 19-CV-10519 (CM), 2020 WL 528823, at *4 (S.D.N.Y. Feb. 3, 2020).  Under New York law, a plaintiff claiming false arrest "must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Id*. at *5 (alteration omitted and quoting *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012)).

Of particular relevance here, "[a]n arrest is privileged if it is based on probable cause."  *Id*.; *see also Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (holding that probable cause to arrest is "an absolute defense to a false arrest claim"); *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation and citation omitted)).  "In

general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed or is committing a crime*." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citation omitted); *see also Cain v. Cnty. of Niagara, New York*, No. 20-CV-1710S, 2022 WL 2134288, at *6 (W.D.N.Y. June 14, 2022) ("Probable cause is determined from the totality of the circumstances . . ."). On a Fourth Amendment claim, the central question is whether probable cause existed to arrest an individual for any crime, not whether probable cause existed with respect to each individual charge. *See Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004). Moreover, "[i]n assessing probable cause, a court must consider [only] those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty." *Sagy v. City of New* York, No. 18-CV-1975 (HG), 2022 WL 6777602, at *3 (E.D.N.Y. Oct. 11, 2022) (quotations and internal citations omitted). Indeed, "[o]nce an officer has probable cause, he or she is 'neither required nor allowed' to continue investigating, sifting and weighing information." *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989)); *see also Alexis v. Town of Cheektowaga*, No. 17-CV-985S, 2021 WL 5239900, at *5 (W.D.N.Y. Nov. 10, 2021) ("Once probable cause has been established, a 'police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997))).

"Officers may rely on hearsay to establish probable cause, and a court 'may properly consider such hearsay' at summary judgment." *Dorsey v. Gannon*, No. 20CV1525(PK/CPK), 2022 WL 4660555, at *3 (E.D.N.Y. Sept. 30, 2022) (quoting *Martinez v. City of New York*, 564 F. Supp. 3d 88, 99 (E.D.N.Y. 2021)); *see also Druss v. Muscatella*, No. 20-CV-06341 (PMH), 2022 WL 3701085, at *5 (S.D.N.Y. Aug. 26, 2022) ("It is well-settled that hearsay can be used to establish probable cause." (quotation and citation omitted)).  In addition, "[a]s a general matter, under both federal and state law, police officers are entitled to rely on information relayed to them from fellow officers in making a probable cause determination." *Da Mata v. City of New York*, No. 21 CIV. 155 (KPF), 2023 WL 112449, at *8 n.8 (S.D.N.Y. Jan. 5, 2023).[4]

The elements of criminal possession of a controlled substance in the third degree are satisfied when a person "knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it."  N.Y. Penal Law § 220.16(1).  Here, it is undisputed that on October 10, 2017, the vehicle Plaintiff was riding in was being surveilled by law enforcement officers who were working with the CI who was the driver of the vehicle.  Both Defendant Vine

---

[4]    Defendant Strohm argues that the grand jury indictments also created a presumption of probable cause to defeat Plaintiff's false arrest claim (Dkt. 55-1 at 14-15), but this argument is misplaced.  The presumption arising from a grand jury indictment only applies to a malicious prosecution claim and not to a claim of false arrest.  *See Merrill v. Copeland*, No. 319CV1240(BKS/ML), 2022 WL 3212075, at *15 (N.D.N.Y. Aug. 9, 2022) (noting that "the presumption of probable cause that arises after indictment by a grand jury is only that of probable cause to prosecute"); *Clase v. United States*, No. 17CV02247 (MKB)(ST), 2020 WL 6438757, at *5 n.2 (E.D.N.Y. Nov. 2, 2020) (holding that "grand jury indictments do not give rise to probable cause in false arrest actions"), *report and recommendation adopted*, No. 17CV2247 (MKB)(ST), 2020 WL 7021593 (E.D.N.Y. Nov. 30, 2020).

and Defendant Strohm perceived the CI, who was related to Plaintiff by marriage, to be a reliable source.  Defendant Strohm testified that the CI reported that he and Plaintiff were going to Rochester to get drugs and the CI was searched prior to meeting Plaintiff.  As the CI and Plaintiff returned from Rochester, the CI advised Defendant Strohm that they had obtained the drugs and Plaintiff was passed out in the vehicle.  Defendant Vine informed Defendant Strohm that he had personally witnessed Plaintiff selling narcotics to this same CI in two separate controlled buys one month earlier and had felony complaints drafted relating to those purchases.  Defendant Vine requested that Defendant Strohm have Plaintiff's vehicle stopped.

The Court agrees with Defendants that the totality of the circumstances, including Defendant Vine's personal observations of the controlled buys, provided probable cause to arrest.  *See People v. Cummings*, 157 A.D.3d 982, 984 (3d Dep't 2018) ("Alternately, the information imparted by task force officers to Clarke—that the driver had, moments earlier, been observed selling heroin in a controlled buy—also provided probable cause for the stop."); *see also People v. DeCasta*, 34 A.D.3d 828, 828 (2d Dep't 2006) ("Here, the communication of the officer who observed the defendant exchange drugs for money was sufficient to establish probable cause for the arrest of the defendant."); *People v. Pope*, 208 A.D.2d 356, 356 (1st Dep't 1994) ("Probable cause existed since the identified off-duty officer, who gave the arresting officer the details of the crime and identified defendant, was an eyewitness to the attempted burglary, and thus had the requisite reliable basis of knowledge.").  Plaintiff's challenges to Defendant Vine's proof and to the veracity or bias of the CI does not vitiate the existence of probable cause.  *See Keyes v. City of New York*,

No. 21-2406-CV, 2023 WL 176956, at *3 (2d Cir. Jan. 13, 2023) (noting that even if officers "ultimately were mistaken in their observations" it would not negate the existence of probable cause to arrest). Nor does the fact that the two prior controlled purchases with the same CI occurred one month before the vehicle stop serve to render the information stale for purposes of probable cause. *See United States v. Davis*, No. 17-CR-615 (JMA), 2021 WL 826261, at *9 (E.D.N.Y. Mar. 3, 2021) ("[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)).

In sum, even viewing the evidence in the light most favorable to Plaintiff, considering the totality of the circumstances, the undisputed evidence establishes that Defendants reasonably believed that Plaintiff knowingly and unlawfully possessed a narcotic drug with intent to sell it. In other words, Plaintiff's arrest was supported by probable cause.

Relatedly, even if the Court were to conclude actual probable cause was lacking, Defendants alternatively argue that they are entitled to qualified immunity on Plaintiff's false arrest claim as a matter of law. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 107 (2d Cir. 2022) ("Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a § 1983 false arrest claim if his actions were objectively reasonable or if 'arguable probable cause' existed at the time of the arrest."). Qualified immunity "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *City of Tahlequah v. Bond*, ___U.S. ___, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To constitute a clearly established right, courts look at prior precedent to determine whether "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, ___U.S. ___, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Because the doctrine of qualified immunity "affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability," *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)), the court must use "a deliberately 'forgiving' standard of review" in determining its application, *id.* (quoting *Amore*, 624 F.3d at 530).

"Without a doubt, the right not to be arrested without probable cause is clearly established." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Nonetheless, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Washington,* 29 F.4th at 105 ("An arresting officer is entitled to qualified immunity even if probable cause is lacking 'so long as "arguable probable cause" was present when the arrest was made.'" (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016))), *cert. denied*, No. 22-80, 2022 WL 17408172 (Dec. 5, 2022); *Adebiyi v. City of New York*, No. 13-CV-480 (WFK) (CLP), 2014 WL 4922888, at *5 (E.D.N.Y. Sept. 30, 2014) ("[a]n officer is entitled to qualified immunity if he can establish that there was 'arguable probable cause' to arrest"

(quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  Arguable probable cause is an "analytically distinct test for qualified immunity" that "is more favorable to the officers than the one for probable cause." *Escalera*, 361 F.3d at 743.  "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Here, on the instant record, the Court concludes that it was objectively reasonable for Defendant Vine and Defendant Strohm to believe that probable cause existed, or at the very least for officers of reasonable competence to disagree on whether probable cause existed to arrest Plaintiff for possession of a controlled substance in the third degree.  In other words, a reasonable officer would conclude that there was probable cause to arrest an individual who the officer had twice personally observed selling narcotics to the CI one month earlier, and was again traveling with the CI and reportedly in the process of traveling back home after purchasing drugs.  As a result, Defendants are entitled to qualified immunity on Plaintiff's claim for false arrest.  *See Morgan v. City of Utica, New York*, No. 620CV1424(MAD/ML), 2022 WL 14760151, at *5 (N.D.N.Y. Oct. 25, 2022) (finding probable cause to arrest but noting that "[a]lternatively, there was, at the very least, arguable probable cause to arrest Plaintiff, and, therefore, Defendant is entitled to qualified immunity as to this claim").

Accordingly, summary judgment is warranted in Defendants' favor on Plaintiff's claims for false arrest.

### B.     Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff must allege that his Fourth Amendment rights were implicated by criminal proceedings initiated or continued against him, with malice and without probable cause, and that the proceedings were favorably terminated. *Thompson v. Clark*, ___ U.S. ___, 142 S. Ct. 1332, 1336 (2022). Likewise, "[t]o establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010)). Because "[t]he elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law . . . 'the analysis of the state and the federal claims is identical.'" *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2d Cir. 2003)).

### 1.     Favorable Termination

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1335. "The favorable termination requirement serves multiple purposes: (i) it avoids parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) it precludes inconsistent civil and criminal judgments where a claimant could succeed in

the tort action after having been convicted in the criminal case; and (iii) it prevents civil suits from being improperly used as collateral attacks on criminal proceedings." *Fishman v. City of New Rochelle*, No. 19-CV-00265 (NSR), 2023 WL 1438731, at *10 (S.D.N.Y. Feb. 1, 2023) (quoting *Thompson*, 142 S. Ct. at 1338). In *Thompson*, the Supreme Court rejected the argument that a favorable termination for purposes of a malicious prosecution claim requires the plaintiff to "show that his prosecution ended with some affirmative indication of innocence." *Id.* at 1338.

Here, Plaintiff was convicted in Seneca County Court of criminal possession of a controlled substance in the seventh degree after a bench trial. Plaintiff appealed his conviction to the New York Appellate Division Fourth Department, and his conviction was affirmed. *People v. Reeder*, 204 A.D.3d 1527 (4th Dep't 2022). Thus, the matter was not favorably resolved in Plaintiff's favor. The fact that Plaintiff was acquitted of the charge for possession of a controlled substance with intent to sell but convicted of the lesser offense does not change this conclusion. *DiBlasio v. City of New York*, 102 F.3d 654, 659 (2d Cir. 1996) (affirming dismissal of malicious prosecution claim where plaintiff was convicted of lesser included offense of unlawful possession of cocaine); *see also Jones v. City of New York*, No. 19-CV-9126 (LLS), 2020 WL 1503509, at *4 (S.D.N.Y. Mar. 27, 2020) ("Thus, because these charges do not involve distinct offenses and distinct allegations, but rather concern the same set of facts, the Court dismisses Plaintiff's malicious prosecution claims as to these acquitted charges."), *aff'd*, 846 F. App'x 22 (2d Cir. 2021); *Matthews v. Cnty. of Cayuga*, No. 517CV1004 (MAD/TWD), 2018 WL 2926271, at *5 (N.D.N.Y. Apr. 18, 2018) ("Moreover, that plaintiff was ultimately

convicted of a lesser charge than that for which he was arrested has been uniformly rejected by courts in this Circuit as the basis for claims of false arrest and malicious prosecution."), *report and recommendation adopted*, No. 517CV1004 (MAD/TWD), 2018 WL 2926272 (N.D.N.Y. June 8, 2018).

Plaintiff argues that he nonetheless meets the requisite standard in light of the fact that the Ontario County indictment was dismissed, which Plaintiff characterizes as a dismissal "in the plaintiff's favor for lack of evidence." (Dkt. 83 at 6). However, the judge dismissing the indictment expressly stated that the dismissal was a result of a prosecutor's grand jury instruction error, and specifically noted that the dismissal was with leave to re-present. (Dkt. 53-17). Thus Plaintiff's characterization is facially inaccurate. That the prosecutor opted not to re-present the charges to the grand jury and allow the Seneca County charges to go forward instead does not conclusively constitute a favorable termination of the September 2017 charges, particularly in light of how intertwined the two proceedings were, though the Court need not resolve that question on the instant motion because as discussed below, the claim fails for other independent reasons.

### 2.    Probable Cause

Alternatively, even were the Court to conclude that Plaintiff could show a favorable termination, he cannot satisfy the requirement to show a lack of probable cause. "In the context of malicious prosecution claims, the relevant probable cause determination is whether there was probable cause 'to believe [the arrestee] could be successfully prosecuted.'" *Sagy*, 2022 WL 6777602, at *5 (quoting *Posr v. Court Officer Shield*, No. 207, 180 F.3d 409, 417 (2d Cir. 1999)); *see also Delanuez v. City of Yonkers*, No. 20 CIV.

4476 (PED), 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) ("The Second Circuit has also cautioned courts not to conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted as in a malicious prosecution action, [o]nly the latter kind of probable cause is at issue[.]" (quotations and citations omitted)).

As explained by the court in *Sagy*:

"If probable cause existed at the time of arrest," then, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks omitted). Thus, a "plaintiff must show that the defendants learned of some 'intervening facts' undermining probable cause 'between arrest and initiation of prosecution, [or the] claim[ ] of malicious prosecution cannot survive.'" *Soto v. City of New York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014)) (alterations in original).

2022 WL 6777602, at *5. "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of [the] intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

In addition, "[o]nce a suspect has been indicted, [New York] law holds that the Grand Jury action creates a presumption of probable cause." *Jones v. City of New York*, 846 F. App'x 22, 24 (2d Cir. 2021) (quoting *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004)); *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) ("[A]n indictment by a grand jury creates a presumption of probable cause.") (quotations and citation omitted). This presumption "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 at 162 (quotation omitted). No evidence beyond sheer speculation and conjecture exists in this case to rebut the

- 19 -

presumption, nor has any evidence been shown to demonstrate that probable cause existing at the time of arrest had dissipated.   Accordingly, Plaintiff's claim for malicious prosecution is foreclosed on this basis.

Moreover, even had Plaintiff identified any evidence to suggest that probable cause dissipated post-arrest, Defendants would nevertheless be entitled to qualified immunity. Similar to a false arrest claim, "[a] police officer likewise is entitled to qualified immunity on a malicious prosecution claim if there was 'arguable probable cause' at the time the criminal proceeding commenced and continued."  *Morgan*, 2022 WL 14760151, at *6 (quoting *Betts v. Shearman*, 751 F.3d 78, 82, 83 (2d Cir. 2014)).   Here, even if lacking actual probable cause, there existed arguable probable cause sufficient to justify the prosecution of the charges instituted against Plaintiff.

Accordingly, because "the undisputed facts establish that [Plaintiff]'s arrest and prosecution were supported by arguable probable cause, . . . the individual defendants are entitled to qualified immunity on [Plaintiff's] false arrest and malicious prosecution claims as a matter of law."  *Diop v. City of New York*, 50 F. Supp. 3d 411, 425 (S.D.N.Y. 2014); *see also Castro v. Cnty. of Nassau*, 739 F.Supp.2d 153, 172 (E.D.N.Y. 2010) (finding that "there are no triable issues of fact as to whether [the defendant] had arguable probable cause," and thus, the defendant was "entitled to qualified immunity on the false arrest and malicious prosecution claims"); *Hardin v. Meridien Foods*, No. 98 CIV. 2268 (BSJ), 2001 WL 1150344, at *6 (S.D.N.Y. Sept. 27, 2001) (stating that "the Court applies the same standard used to evaluate qualified immunity in the false arrest context" as in the malicious prosecution context).

### 3.    Actual Malice

Independently, the record is devoid of any factual basis to find actual malice on the part of Defendant Vine or Defendant Strohm in initiating the prosecution.  "[M]alice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Lowth*, 82 F.3d at 573 (quotation and citation omitted).  "Actual malice is lacking when a police officer reasonably chooses between conflicting evidence."  *Suren v. City of New York*, No. 19CV2659(KAM/RER), 2022 WL 4466098, at *11 (E.D.N.Y. Sept. 26, 2022) (granting summary judgment on malicious prosecution claim where "Plaintiffs have not proffered evidence and the Court has not found any in the record that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by improper motive or something other than a desire to see the ends of justice served." (quotation and citation omitted)); *Guillen v. City of New York*, No. 19CIV5655 (JPC)(OTW), 2022 WL 4072925, at *11 (S.D.N.Y. Sept. 2, 2022) (granting summary judgment on malicious prosecution claim where there was "no evidence that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by something other than a desire to see the ends of justice served." (citation and quotation omitted)).

Here, in his amended complaint, Plaintiff contends that Defendants were motivated to target him because they failed to convict him of prior crimes in 2015 (Dkt. 14 at 8), but no evidence has been adduced that would support that claim or any conclusion that Defendant Vine or Defendant Strohm had any personal animus toward Plaintiff or

improper motive in pursuing the charges against him.  Accordingly, this provides an additional basis to warrant summary judgment on Plaintiff's malicious prosecution claim.

## III.   Remaining Motions

As noted, in response to the pending summary judgment motions, Plaintiff filed a motion to exclude and Defendant Vine filed a motion for leave to respond to Plaintiff's fact statement.

Plaintiff's motion requests that the Court not consider audio and video recordings in connection with the summary judgment motion on grounds that they were belatedly turned over by Defendants during discovery and their purpose is to prejudice Plaintiff. (Dkt. 95 at ¶¶ 4, 5).  Because the Court did not consider audio and video recordings in making its determination on the instant motion, Plaintiff's motion is denied as moot.  In addition, Defendant Vine filed a motion for leave to respond to Plaintiff's most recently filed statement of facts.  The Court concludes that there is already a fulsome record and no additional response by Defendant Vine is necessary to resolve the summary judgment motions, and accordingly, Defendant Vine's motion is denied as moot.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by Defendant Vine (Dkt. 53) and Defendant Strohm (Dkt. 55) are granted.  Plaintiff's motion to exclude (Dkt. 95) and Defendant Vine's motion to file a response to Plaintiff's statement of facts (Dkt. 115) are denied as moot.  The Clerk of Court is directed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 16, 2023
      Rochester, New York